[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The defendant and plaintiff, whose maiden name was Cuff, intermarried at Groton, Connecticut on August 4, 1985; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are two minor children issue of the marriage, Christopher Richardson, born August 9, 1990 and Kyle Richardson, born September 19, 1993; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency is presently contributing to the care or welfare of the parties or their children.
Each party had a different opinion as to why their marriage broke down but both agree that each was to blame for the breakdown of their marriage.
Plaintiff testified that shortly after the marriage she was raped at her place of employment by two of her bosses; that this affected their sexual life as the defendant, who learned of the rape, did not want to touch her; that she argued with the defendant over his use of cocaine; that she began to use cocaine with the defendant; that when she was eight months pregnant, the defendant slept with a neighbor; that defendant was not very helpful with the two children; that after she got a license to do daycare work, the defendant would be upset with the children she was caring for; that, on occasion, the defendant would complain about what plaintiff cooked for supper and made her cook something else for him; that defendant drank constantly and became alcoholic; that the defendant went drinking with his friends and returned at midnight or later and that, when plaintiff told defendant that her mother's cancer had spread to her hip, he walked away and wasn't there for her. CT Page 8142
The defendant admits that his drinking and their relationship with others affected the marriage; that the rape of the plaintiff, which he questions, really affected him and that he found the plaintiff in a compromising situation with his friend
The defendant denies that he was not a good parent. He testified that he called many times to see the children but that the plaintiff never called him back; that he was a good provider; that he did get involved in many activities with the children; that he realized his drinking problem and started going to AA; that he has been sober for over a year and goes to AA meetings as much as possible.
The plaintiff admitted having sexual relations with the defendant's best friend after papers were served on the defendant in January 1999; but she denies trying to hinder defendant's visitation with the children.
It is obvious that the marriage of the parties has broken down irretrievably with no hope for reconciliation. I find both parties equally at fault for the breakdown of their marriage.
The plaintiff, who was born January 16, 1962 is in good health and is not on any medications. At the time of her marriage to the defendant, plaintiff was employed as a secretary at General Dynamics, Groton, Connecticut. After her marriage she left her employment because of the rape incident she testified to. Thereafter she became employed as a legal secretary for attorney Stephen Embry of the law firm of O'Brien, Shaffier, etc., in Groton, Connecticut. She worked there until one week before her son Christopher was born.
When Christopher was four months old, she again was employed by the O'Brien law firm three nights a week from 6:00 p.m. to 10:00 p.m. When employed, the defendant would babysit for Christopher but because the defendant had difficulty in babysitting for Christopher. The plaintiff quit her job when Chris was nine months old.
In April 1991 plaintiff got a daycare license and started caring for children in her home. She earned approximately $100.00 per week. In September 1999 the plaintiff returned to employment with the O'Brien law firm, working 30 hours per week for $9.60 per hour. She has a net weekly income of $243.50. See plaintiffs financial affidavit. She also has medical insurance through her employment.
The defendant, who was born January 16, 1962, is in good health and is presently a reformed alcoholic. At the time of his marriage to the plaintiff, the defendant was employed as a plumber at Frausini Plumbing. CT Page 8143 One year after his marriage, defendant became a licensed plumber. His gross income in 1999 was $51,331.33. Defendant's Exhibit N. This would amount to a gross weekly income of $987.14.
Defendant is a member of the plumber's union and as such he works on different jobs with different rates of pay. Presently his hourly rate of pay is $22.00. On a 40 hour week, his gross pay would be $900.00 and his net weekly pay about $600.00. See Defendant's Exhibit O.
The medical insurance which the defendant has covers his two children. He is willing to continue such coverage.
During the marriage the defendant received an inheritance of around $20,000.00. It was used to purchase a trailer, which was subsequently sold, and to purchase 7 Georgia Street, Oakdale, Connecticut, the marital home, from plaintiffs parents. Some money was given to plaintiffs parents for their purchase of a home in Florida. However, the defendant makes no claim for repayment of any such sums or of his inheritance.
At the time the parties purchased 7 Georgia Street, the parties signed a document to repay plaintiffs parents a loan of $4,040.00 which the parties used to purchase 7 Georgia Street. Plaintiffs Exhibit L.
The present value of the marital home is $114,000.00 and is subject to a mortgage and home equity loan totalling about $66,734.00. The parties also own a 1992 Dodge and a 1986 Chevrolet.
The defendant has an IRA valued at about $23,441.00 and a Connecticut Pipetrades Local 777 Annuity estimated value $10,595.00; a Connecticut Plumber and Pipefitters Pension; a National Pipefitters and Plumbers Pension; and an IRA with Citizen's Bank valued at $24,000.00. (See Plaintiffs Exhibits 7, 10, 11 and 12.)
Plaintiff seeks from the defendant the sum of $3,000.00 for child support pendente lite retroactively from January 8, 1999 to April 12, 1999 when by agreement the defendant agreed to pay $350.00 per week unallocated child support and alimony. During the period January 8, 1999 to April 12, 1999 the defendant voluntarily paid to the plaintiff $1,900.00. Based on the claimed figure of $350.00 per week, the plaintiff claims that the defendant owes her a balance of $3,000.00.
Plaintiffs claim is based on Connecticut General Statute § 46b-83
which, inter alia, states "At any time after the return day of a complaint under section 46b-45, 46b-55 or 46b-61 and after hearing, alimony and support pendente lite may be awarded to either party from the date of the filing of an application therefor with the Superior Court." CT Page 8144
According to the file the plaintiffs complaint and motion for alimony and support pendente lite, though dated January 8, 1999, were filed with the court on January 25, 1999. Therefore, any order for retroactive support and alimony pendente lite would be from January 25, 1999 to April 11, 1999.
The plaintiffs and defendant's financial situations between January 25 and April 11, were no different than when the plaintiff and the defendant stipulated that the defendant would pay to the plaintiff $350.00 per week unallocated alimony and support. Therefore, this court orders that the defendant pay to the plaintiff the sum of $350.00 per week unallocated alimony and support for the period from January 25, 1999 to April 11, 1999 minus the sum of $1,900.00 he paid to the plaintiff during said period. The court will retain jurisdiction if the parties cannot agree on the amount due plaintiff hereunder.
The defendant sought a modification of the $350.00 per week allocated alimony and support due to a change in circumstances resulting from his being laid off. The parties, however, agreed that he shall pay to the plaintiff, during the period he is laid off, $150.00 per week unallocated alimony and support provided he provides to the plaintiff a copy of his unemployment compensation check.
After considering all the factors in Connecticut General Statutes §§ 46b-61, 62, 66a, 81, 82 and 84, and the evidence, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
It is further ordered that:
1. The parties shall share joint legal custody of their minor children with primary custody to the plaintiff. The defendant shall have reasonable rights of visitation as is set forth in defendant's proposed orders on file dated May 10, 2000.
2. The defendant shall pay to the plaintiff child support of $200.00 per week.
3. The defendant shall provide medical insurance for the minor children. The parties shall share unreimbursed medical expenses in that percentage which is in accordance with the Child Support Guidelines Formula. Also, the defendant shall pay to the plaintiff $130.00 within 60 days, his share of unreimbursed medical expenses for the children which plaintiff previously paid. CT Page 8145
4. The defendant shall pay to the plaintiff alimony of $100.00 per week for seven years, the plaintiffs remarriage or the death of either party, pursuant to C.G.S., whichever is the first to occur. Said alimony shall be modifiable as to amount but not as to term. In the event of plaintiffs cohabitation pursuant to C.G.S. § 46b-86 (b), said alimony may be modified in accordance with said statute.
5. The defendant shall name the plaintiff as beneficiary of his currently existing life insurance policies for so long as he has either a child support or alimony obligation to the plaintiff. He shall provide the defendant with copies of said policies or authorization for her to confirm his compliance with this order.
6. The defendant shall transfer to the plaintiff all of his interest in the marital home located on Georgia Road, Oakdale, Connecticut. The plaintiff shall assume and pay all mortgages, taxes and insurance therein and hold the defendant harmless thereon. The plaintiff shall pay to the defendant by way of a promissory note secured by a mortgage on said premises the sum of $22,500.00 payable when their youngest child graduates from high school or a sale of the premises whichever is the first to occur.
7. The defendant shall pay to the plaintiff by Qualified Domestic Relations Order onehalf of his accrued present benefits in the Connecticut and the National Plumbers and Pipefitters Pension Plans. He shall name her as survivor beneficiary of his preretirement benefits and survivor beneficiary of his post-retirement benefits to insure that she receives her share of her interest in said accrued benefits.
8. Each party shall keep the motor vehicle he or she currently operate and, if necessary, titles and registrations shall be transferred accordingly. Further, each shall pay any outstanding loan on said motor vehicle and hold the other harmless on said loan.
9. The parties shall each pay one-half of the Visa and Sears debts listed on plaintiffs financial affidavit.
10. The plaintiff shall pay the remaining debts listed on her financial affidavit and the defendant shall pay the debts listed on his financial affidavit. Each shall hold the other harmless on said debts.
11. Each party shall pay their own attorney's fees.
Vasington, JTR